Filed: September 27, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

THOMAS BURKE;
and EDUCATIVE, LLC,
an Oregon limited liability company,

Petitioners on Review,

v.

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,

Respondent on Review.

(CC CV09040752; CA A144975; SC S059420)

On review from the Court of Appeals.*

Argued and submitted November 8, 2011.

Gary P. Shepherd, Oregon Land Law, Portland, argued the cause and filed the brief for petitioners on review.

Stephanie L. Striffler, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Balmer, Chief Justice, and De Muniz, Durham, Kistler, Linder, and Landau, Justices.**

LANDAU, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Kistler, J., dissented and filed an opinion, in which Linder, J., joined.

*Appeal from Clackamas County Circuit Court, Thomas J. Rastetter, Judge. 241 Or App 658, 251 P3d 796 (2011).

**Walters, J., did not participate in the consideration or decision of this case.

LANDAU, J.

Under section 6(6) of Ballot Measure 49 (2007), certain "owners" of property may file a claim to establish up to three home-site approvals, notwithstanding existing land use restrictions that would otherwise preclude such development. At issue in this case is the meaning of the term "owner" as it is used in that section. Specifically, the issue is whether the term includes a seller of property under a land sale contract who retains legal title to the property. The Court of Appeals concluded that, as the term is used in Ballot Measure 49, the term "owner" means only the purchaser of property under a land sale contract and does not include the seller of the property who retains title. For the reasons that follow, we reverse the decision of the Court of Appeals.

The relevant facts of this case are few and undisputed. Plaintiff Thomas Burke acquired 18 acres of property north of Highway 212 in Clackamas County in 1967. During the years following his acquisition, the Oregon Legislative Assembly enacted comprehensive statewide land use planning goals. *See generally* ORS chapter 197. Pursuant to those statewide land use planning goals, local governments adopted a variety of restrictions to the use of land, including Burke's property.

In 2004, the voters adopted Ballot Measure 37 (2004), designed to ameliorate the effects of existing land use regulations. In short, Measure 37 required state and local governments either to pay "just compensation" for the diminution in the value of land that results from land use restrictions imposed after the owner of private property acquired the land or to waive the applicable land use restrictions. *See Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 223-25, 264 P3d 1265 (2011)

1

(describing enactment of Measures 37 and 49); *Corey v. DLCD*, 344 Or 457, 460, 184 P3d 1109 (2008) (same).

In 2005, Burke executed a land sale contract under the terms of which he agreed to transfer his property to Griffin. As part of the contract, Burke retained legal title to the property and promised to assist Griffin in pursuing either compensation or a waiver under Measure 37. He also retained the right to possess the property for a period of years after the execution of the contract. The parties recorded the contract with the Clackamas County Office of the Clerk. Shortly thereafter, Griffin transferred his interest in the land sale contract to plaintiff Educative, LLC. That transaction was also properly recorded. In June 2005, Burke and Educative filed a joint Measure 37 claim, as provided for in the contract.

Meanwhile, public concern in Oregon grew over the potential impact of Measure 37 claims. *Friends of Yamhill County*, 351 Or at 224. In response, in 2007, the legislature referred Ballot Measure 49 to the voters in an attempt to remedy some of the perceived shortfalls of Measure 37. Voters approved the measure, and, on December 6, 2007, it became effective. *Id.*

Measure 49 retroactively extinguished any previously issued Measure 37 waivers of land use regulations and substituted a new framework for ameliorating the effects of those land use regulations. As we explain in greater detail below, section 6 of the new law permits the "owner" or "owners" of property to obtain development approval of up to three additional homes on the property if, on the date that the owner or owners acquired the property, then-existing land use regulations did not preclude such

2

development. Thus, an indispensible requirement of a Measure 49 claim under section 6 is that the "owner" or "owners" acquired the property *before* any land use regulations that now preclude building the homes came into existence. Measure 49 defines the term "owner" to mean, among other things, "[t]he owner of fee title to the property," or "[t]he purchaser under a land sale contract, if there is a recorded land sale contract in force for the property." ORS 195.300(18). It also provides that, when there are multiple owners, the acquisition date is the earliest date that one of the owners acquired the property. *Id.*

Pursuant to section 6 of Measure 49, Burke and Educative filed with the Department of Land Conservation and Development (DLCD or department) a Measure 49 claim, seeking development approval of up to three homes on the 18-acre Clackamas County property. They contended that they were both "owners" of the property -- Burke because he held title to the property and Educative because it was the purchaser under a recorded land sale contract. They further contended that they were entitled to the development approval because Burke, whose earlier acquisition date controls, acquired the property well before any land use regulations precluded the construction of the homes.

DLCD denied the Measure 49 claim. It reasoned that, although Burke held legal title to the property and had acquired the property well before any applicable land use regulations, he was not an "owner" for the purposes of the claim. According to DLCD, in the case of a land sale contract, the *only* owner is the purchaser under that contract. That left Educative, the purchaser, as the owner, because Educative had acquired the property after the applicable regulations went into effect.

3

Burke and Educative then petitioned for judicial review, arguing that DLCD had erred in determining that Burke was not an owner under Measure 49. The trial court affirmed the DLCD final order. Burke and Educative appealed that decision, and the Court of Appeals affirmed. *Burke v. DLCD*, 241 Or App 658, 251 P3d 796 (2011). The Court of Appeals reasoned that the different categories of owners under ORS 195.300(18) are mutually exclusive; thus, in the case of a land sale contract, the only owner is the purchaser under that contract, regardless of whether the seller retains title to the property. According to the Court of Appeals, that interpretation is supported by the fact that the statutory definition of the term "owner" is phrased in the disjunctive, which the court reasoned ordinarily means that the stated alternatives are mutually exclusive. The court also noted that, under a land sale contract, the seller does not possess the property and no longer is subject to the land use restrictions from which Measure 49 is intended to provide relief. We allowed review to determine whether the Court of Appeals' interpretation of the statute is correct.

The issue before us is thus one of statutory construction, which requires an examination of the text of the statute in context, along with any relevant legislative history and canons of statutory construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). *See also State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995) (court applies same method of statutory analysis to statute enacted by voters as it would to statute enacted by legislature). When we interpret a referendum such as Measure 49, our goal is to discern the intent of the voters who adopted it. *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 56-57, 11 P3d 228 (2000).

4

As we have noted, the Oregon Legislative Assembly referred Measure 49 to the voters. The measure began with a statement of legislative findings:

"(1) The Legislative Assembly finds that:

"(a) In some situations, land use regulations unfairly burden particular property owners.

"(b) To address these situations, it is necessary to amend Oregon's land use statutes to provide just compensation for unfair burdens caused by land use regulations.

"(2) The purpose of [Measure 49] is to modify Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources."

ORS 195.301(1) - (2).

Among other things, Measure 49 then authorizes relief from "unfair" land use regulations in the form of home-site authorizations. Under section 6 of the measure, a person may file a claim for development approval of up to three additional homes on a given parcel of property. To obtain that relief, the claimant must meet each of the following criteria:

"(a) The claimant is an owner of the property;

"(b) All owners of the property have consented in writing to the claim;

"(c) The property is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(d) One or more land use regulations prohibit establishing the lot, parcel or dwelling;

"(e) The establishment of the lot, parcel or dwelling is not prohibited by a land use regulation described in ORS 197.352(3); and

"(f) On the claimant's acquisition date, the claimant lawfully was

5

permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

Or Laws 2007, ch 424, § 6(6). The key provisions for the purposes of this case are the requirements that the claimant be the "owner" of the property at the time and that the claimant acquired that ownership before adoption of land use regulations that otherwise would preclude the construction of the three homes.

Measure 49 plainly contemplates that there may be multiple owners of a single parcel of property. It provides that, when there are multiple owners, "[a]ll owners" must consent to the filing of the claim. *Id*. The law also contemplates that, in the case of multiple ownership, the different owners may have acquired their respective interests at different times. Under ORS 195.328(1), "[i]f there is more than one claimant for the same property under the same claim and the claimants have different acquisition dates, the acquisition date is the earliest of those dates." In addition, "[i]f a claimant conveyed the property to another person and reacquired the property, whether by foreclosure or otherwise, the claimant's acquisition date is * * * [t]he date the claimant reacquired ownership of the property." ORS 195.328(3)(b).

Measure 49 includes a definition of the term "owner." Under ORS 195.300(18),

"'[o]wner' means:

"(a) The owner of fee title to the property as shown in the deed records of the county where the property is located;

"(b) The purchaser under a land sale contract, if there is a recorded land sale contract in force for the property; or

"(c) If the property is owned by the trustee of a revocable trust, the

6

settlor of a revocable trust, except that when the trust becomes irrevocable only the trustee is the owner."

Thus, an owner can mean each of three different things: one who holds title, the purchaser under a land sale contract, or the settlor of a revocable trust. The issue before us is whether those three categories of ownership were intended to be mutually exclusive; that is to say, whether there can be only one category of "owner" that applies in each case.

Burke and Educative argue that the categories of ownership should be understood to be cumulative and not mutually exclusive. In their view, the statutory definition of "owner" contains no wording that suggests that only one category of "owner" may apply in a given case.

DLCD, on the other hand, suggests that the statute does contain such wording, for two reasons. First, the department notes that the statutory definition is phrased in terms of alternatives, separated by the connector "or." Citing *Lommasson v. School Dist. No. 1*, 201 Or 71, 261 P2d 860, *on reh'g*, 267 P2d 1105 (1954), DLCD argues that the "plain meaning" of the word "or" is disjunctive, which it contends clearly indicates that the three definitional categories are "mutually exclusive." Second, DLCD argues that the structure of the definition confirms that interpretation. The department observes that, although the first category of ownership -- the person who holds title -- is unqualified, the second and third categories are "conditional," meaning that, under the condition stated, a narrower definition of "owner" applies. Thus, DLCD argues, under ORS 195.300(18)(b), in the case of a recorded land sale contract, the purchaser under that

7

contract is the owner, and no one else.

Burke and Educative have the better of the argument. To begin with, DLCD is simply incorrect in relying on the supposed "plain meaning" of the connector "or." The fact is that there is nothing very plain about the use of the connective "or" in legal drafting. *See, e.g.*, Bryan A. Garner, *A Dictionary of Modern Legal Usage* 624 (2d ed 1995) ("Virtually every book on drafting legal documents contains a section on the ambiguity of the two words ['and' and 'or']."); David Mellinkoff, *Mellinkoff's Dictionary of American Legal Usage* 449 (1992) ("Sometimes it joins alternatives; sometimes it doesn't. Sometimes *or* means *and*; sometimes it doesn't. In short, *or* is short and unreliable.").

To say that "or" is "disjunctive" is true enough. But authorities agree that a disjunctive connector can have either an "inclusive" or an "exclusive" sense. Thus, "A or B" can mean one or the other, but not both. But it can also mean one or the other, *or both*. Garner, *A Dictionary of Modern Legal Usage* at 624.

That is certainly true in ordinary conversation. If, for example, a person is told, "If you obtain a passport, you may travel to England, France, or Germany," that does not necessarily mean that he or she may travel to only one of those destinations. Or, to borrow an example from Garner, if a person is asked whether she wishes "cream or sugar" with her coffee, the request does not necessarily exclude the possibility of having both. Bryan A. Garner, *Modern American Usage* 45 (2003).

It is also true in the law that, particularly in the drafting of contracts and statutes, it is common to arrange material in "tabular" form, with terms and conditions

8

arranged in lists separated by connective terms such as "and" and "or." *See generally* Reed Dickerson, *The Fundamentals of Legal Drafting* 104 (2d ed 1986) (noting that, in legal drafting, "or" may have either inclusive or exclusive meaning); Maurice B. Kirk, *Legal Drafting: The Ambiguity of "And" and "Or,"* 2 Tex Tech L Rev 235 (1971) (same). In fact, it has been asserted that, in legal drafting, it is more often the case that the connective "or" is used in the inclusive sense. *See* Dickerson, *The Fundamentals of Legal Drafting* at 106 ("[o]bservation of legal usage suggests that in most cases 'or' is used in the inclusive rather than the exclusive sense").

Consistently with that observation, Oregon's Office of Legislative Counsel, which is responsible for drafting legislation that originates in the Oregon Legislative Assembly, not only recognizes the distinction between the inclusive and exclusive senses of the connector "or," but also has stated a categorical rule in its *Bill Drafting Manual* that,

> "[b]y longstanding use in the ORS, the 'or' in tabulation *is always 'inclusive.'* That is, '(1); or (2)' means 'Either (1) or (2) or both'; it does not mean 'either (1) or (2) but not both.' If a drafter wants to say 'either (1) or (2) but not both', the drafter needs to find a way other than tabulation to do so."

Office of Legislative Counsel, *Bill Drafting Manual* § 3.10 (2012) (emphasis added).

Legislative counsel may have overstated the case somewhat; the fact is that the use of "or" in the Oregon Revised Statutes is not *always* inclusive. But the point remains that DLCD is incorrect in asserting the use of the term is *never* inclusive.

*Lommasson* is not to the contrary. In that case, the relevant statute defined tenure status for public school teachers as "all teachers who have been regularly

9

appointed and employed by any such school district for not less than three successive school years, or who may hereafter be placed upon the permanent list by resolutions of the school board." OCLA § 111-2304. The defendant argued that, to acquire tenure, a teacher *must* prove that she met *both* of those qualifications. 267 Or at 77-78. Thus, the defendant urged the court not to read the connector "or" as a disjunctive at all, an argument that this court properly rejected. *Id.*

Whether the disjunctive "or" is inclusive or exclusive will depend on its context. In some cases, the legislature may list alternatives and expressly state that only one applies. *See, e.g.*, ORS 18.265(1) ("The motion must be supported by one of the following[.]"); ORS 25.414(1)(c) ("If withholding is only for arrearage, the amount to be withheld is one of the following[.]"); ORS 199.420 ("'[D]istrict' means one of the following[.]").

In other cases, the very nature of the alternatives is such that only one may possibly apply. If a person is told that, "on Thursday, Mary will be in Eugene or in Boston," it is clear that the "or" is being used in its exclusive sense. Measure 49 provides an example closer to the point. It states that a landowner may pursue one of three options in pursuing a claim under that law -- an "express pathway" that permits him or her to construct three homes on the property, a "conditional pathway" that allows up to 10 homes, or a "vested right" option that allows complete development of the property. Or Laws 2007, ch 424, § 6; *Friends of Yamhill County*, 351 Or at 225. The very nature of those options makes clear that the landowner must choose one -- and only one -- of the three options. The owner cannot build a maximum of three homes and 10 homes at the

10

same time.

With that in mind, we turn to the definition of "owner" in ORS 195.300(18). We begin by noting that nothing in the wording of that definition suggests that the three categories have mutually exclusive effect. ORS 195.300(18)(a) does not, for example, introduce the three categories of ownership by stating that the term "owner" means "only one of the following." As we have noted, the legislature certainly knows how to do so when it wishes to signal that listed alternatives are to be mutually exclusive. Yet it gave no such express indication in this case.

Neither does the phrasing of each of the three categories suggest that they are mutually exclusive alternatives. ORS 195.300(18)(a), for example, does not say that an "owner" is the "owner of fee title to the property *unless the owner has sold the property on a land sale contract*." Likewise, ORS 195.300(18)(b) does not state that, in the case of a recorded land sale contract, "*only* the purchaser" is the owner of the property being purchased under that contract.

In that regard, the dissent suggests that the nature of the categories *does* imply that they are mutually exclusive. In particular, the dissent notes that, under the doctrine of equitable conversion, purchasers on land sale contracts were generally regarded as the sole owners of the property being purchased.

The argument fails for two reasons, however. First, the "rule" that the dissent invokes is not quite so categorical. It was subject to sufficient exceptions that this court concluded in *Heider v. Dietz*, 234 Or 105, 114, 380 P2d 619 (1963), that "equitable conversion is not a condition of property for all purposes, but is only a name given to a

11

situation resulting from the application of equitable doctrines to special states of facts." Second, regardless of the existence of a doctrine of equitable conversion, "the legislature is free to define words to mean anything that it intends them to mean." *Patton v. Target Corp.*, 349 Or 230, 239, 242 P3d 611 (2010). *See also U.S. National Bank v. Boge*, 311 Or 550, 557, 814 P2d 1082 (1991) ("[t]he legislature was free to displace the common law"); *State v. Couch*, 341 Or 610, 619, 147 P3d 322 (2006) ("the term 'wildlife' means whatever the legislature says that it means," regardless of what it meant at common law). In this case, the fact remains that -- the doctrine of equitable conversion notwithstanding -- in ORS 195.300(18), the legislature defined the term "owner" to include one who holds title, regardless of whether that person is the seller on a land sale contract.

We note also that other definitions in the same section employ a similar format of listing multiple alternatives separated by the disjunctive connector "or." In each case, the "or" is used in its inclusive sense. Thus, for example, ORS 195.300(6) defines "federal law" to mean, among other things, "[a] statute, regulation, order, decree *or* policy enacted by a federal entity *or* by a state entity acting under authority delegated by the federal government." (Emphasis added.) It is fairly clear that the definition does not preclude "federal law" from meaning more than one of the listed definitional components. Similarly, ORS 195.300(14) defines "land use regulation" to mean a rather long list of regulations, including "[a] statute that establishes a minimum lot or parcel size," a statute that "restricts the residential use of private real property," "[a] provision of a city comprehensive plan, zoning ordinance or land division ordinance that restricts the residential use of private real property zoned for residential use," laws or administrative

12

rules enacted "for the purpose of regulating a forest practice," "*or * * * [a] provision of a Metro functional plan that restricts the residential use of private real property." (Emphasis added.) Once again, it is clear that the definition does not mean that, for Measure 49 purposes, a "land use regulation" can mean one -- and only one -- of those definitional possibilities in each case.

In that context, it seems likely that, when ORS 195.300(18) sets out three definitional components of the term "owner" separated by the connector "or," those components were not intended to be mutually exclusive. *See Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) ("When the legislature uses the identical phrase in related statutory provisions * * * we interpret the phrase to have the same meaning in both sections."). In other words, consistently with the rule stated in the *Bill Drafting Manual* and with the other definitions in ORS 195.300, the term "owner" was intended to refer to any or all of the stated alternatives, depending on the facts of each case.

With respect to that point, DLCD insists that ORS 195.300(18)(b), by mentioning only the purchaser under a land sale contract, necessarily *implies* that only the purchaser is the owner under a land sale contract. That, however, neglects the fact that there is no reason for the definition to mention anyone other than the purchaser -- *i.e.*, the seller who holds title to the property -- because that person already has been listed explicitly as an "owner" under ORS 195.300(18)(a).

The nonexclusive nature of the listed categories of ownership is further clarified by the phrasing of the third of those categories. As we have noted, ORS 195.300(18)(c) provides that, "[i]f the property is owned by the trustee of a revocable

13

trust, the settlor of a revocable trust" is the "owner" for the purposes of ORS 195.300(18), "except that when the trust becomes irrevocable only the trustee is the owner." That phrasing is significant in two respects.

First, it refers to *both* the trustee of the revocable trust -- who presumably holds title to the property -- and the settlor as the "owners" of the trust. Indeed, unless both the trustee and the settlor are owners, the phrasing of the sentence in ORS 195.300(18)(c) makes no sense. The only alternative would be to read the word "own" as it is used in that paragraph to mean two different things in the same sentence, so that the reference to the trustee as the one who "own[s]" the trust would mean something different from the settlor who is, in such circumstances, the "owner" of the same trust. That is an unlikely interpretation. *See State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) ("Although, in the abstract, there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently.").

Second, ORS 195.300(18)(c) states an exception if the trust should become irrevocable, in which case "*only* the trustee is the owner." (Emphasis added.) The phrasing implies that, although in the case of an irrevocable trust "*only* the trustee is the owner," in the case of a revocable trust, *not only* the trustee is the owner, but also the settlor. The phrasing of ORS 195.300(18)(c), in other words, strongly suggests that the three categories of ownership were not intended to be mutually exclusive.

DLCD argues that reading the categories of ownership set out in ORS

14

195.300(18) as anything but mutually exclusive defeats the stated purpose of Measure 49.

DLCD reasons that the statement of legislative findings provides that the measure is intended "to provide just compensation for unfair burdens" on the use of private property caused by land use regulations. A seller on a land sale contract, DLCD argues, is in no way burdened by land use restrictions, because the seller does not possess the property. The argument, however, rests on the assumption that the seller of the land was not burdened by the diminution in value of the land occasioned by the restrictions on its use caused by land use regulations.[1]

Aside from that, a statement of legislative findings, without more, is a slim reed on which to rest an argument that the operative provisions of a statute should be taken to mean something other than what they appear to suggest. Thus, for example, in *Clackamas County v. 102 Marijuana Plants*, 323 Or 680, 920 P2d 149 (1996), the claimant was arrested for growing marijuana plants, and the state initiated a forfeiture action, confiscating not only the plants but also his residence, automobile, and guns. *Id.* at 683. The claimant argued that, because he had not used his real and personal property as part of his illegal conduct and did not obtain those items through the profits of his

---

[1] In fact, under the terms of the land sale contract between the parties in this case, the seller *did* retain the right to remain in possession of the premises after the execution of the contract. We mention that not because it is of significance to our interpretation of the statute, but because it demonstrates fairly clearly that DLCD is incorrect that sellers on a land sale contract never retain possession.

illegal conduct, the items were not subject to forfeiture. The trial court agreed with the claimant and denied forfeiture of those items on the ground that the forfeiture statute contained a statement of legislative findings that declared that the purpose of the law was to authorize taking property that "facilitated" criminal activity. *Id.* Because the legislative policy limited forfeiture to the property related to the crime committed, the trial court reasoned, only the claimant's property related to his drug crime was subject to forfeiture in this case. *Id.*

Reversing the trial court, this court concluded that the trial court's reliance on that legislative finding was misplaced. That was so, the court explained, because the legislative finding was not referred to in the operative sections of the forfeiture statute, which were phrased in broader terms. *Id.* at 688-89. When considering the statute as a whole:

> "The text and context of [the forfeiture act] indicate that a forfeiting agency may seek forfeiture under that [a]ct, not only of profits derived directly or indirectly from prohibited conduct, but also of properties that are used in prohibited conduct or that 'facilitate' that conduct. *The exhortations in section 1, stated as findings, are reasons to vote for the bill, but they are not stated to be limits on the much broader wording of the operative section defining property subject to forfeiture*, section 3. Its operative section enacts forfeiture authority that is much broader and extends beyond those forfeitures that could be justified by those reasons."

*Id.* at 688 (emphasis added; footnotes omitted). *See also Hamilton v. Paynter*, 342 Or 48, 55, 149 P3d 131 (2006) ("[T]he statutory text shows that, even if the legislature had a particular problem in mind, it chose to use a broader solution."); *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986) ("Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution

16

may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention.").

In this case, as in *Clackamas County*, the legislature included findings as part of what was ultimately passed by the voters as Measure 49. But even assuming that those findings reflect the view that only possessory owners are the targets of the law, the fact remains that those findings are not reflected in the operative provisions of the law.

DLCD also argues that a different bit of context suggests that the definitional components of ORS 195.300(18) are mutually exclusive. ORS 195.328, which concerns determining the Measure 49 claimant's acquisition date, provides, in part:

"(1) Except as provided in this section, a claimant's acquisition date is the date the claimant became the owner of the property as shown in the deed records of the county in which the property is located. If there is more than one claimant for the same property under the same claim and the claimants have different acquisition dates, the acquisition date is the earliest of those dates.

"* * * * *

"(3) If a claimant conveyed the property to another person and reacquired the property, whether by foreclosure or otherwise, the claimant's acquisition date is:

"* * * * *

"(b) [t]he date the claimant reacquired ownership of the property * * *."

DLCD argues that subsection (3) suggests that a seller in a land sale contract cannot be the owner unless he or she reacquires the property. That, however, assumes that the seller on a land sale contract has fully "conveyed" the property to another person, even

17

though the seller has retained title.

Certainly, the word "convey" can be used to simply refer to a transfer of some interest to another party. *See Webster's Third New Int'l Dictionary* 499 (unabridged ed 2002) (defining "convey" as both "to transfer (as real estate)" and to "pass (a title, as to real estate)"). But it is also used to denote a very specific type of transfer, namely, the transfer of legal *title* from one party to another. ORS 93.010, concerning conveyancing and recording, states that, a "conveyance[]" of land, or interest therein, "may be made by deed" signed by the grantor or an agent of the grantor and recording of that deed. And all the statutory deed forms use the word "convey" to signify the transfer of legal title. ORS 93.850 - 93.860.

Distinguished from a "conveyance" is a "contract to convey," commonly referred to as a land sale contract. ORS 93.030(2). Those two legal concepts are treated as distinct transactions under ORS chapter 93. As this court has previously explained,

> "[b]ecause the ownership of real property is divisible in so many ways, a real property owner often is described as holding a 'bundle of sticks.' The portion of the 'bundle of sticks' retained by the vendor in a land sale contract includes two large sticks: (1) the right to receive contract payments, and (2) the legal title in the property securing the purchaser's obligation to make the contract payments, with the 'concomitant possibility of resuming general ownership of the land upon default.'"

*Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991) (quoting Frank R. Lacy, *Behind and Beyond the 1975 Legislation on Creditors of Vendors*, 55 Or L Rev 227, 231 (1976)).

Like a land sale contract, there are other interests in property, the transfers of which are not considered "conveyances" but still result in the creation of an interest in

18

the property in a person or entity other than the holder of fee title. *See, e.g.*, ORS 86A.100(6) ("'Mortgage loan' means a loan, extension of credit or retail sales contract, other than a mortgage banking loan, secured by a mortgage or deed of trust or a lien *interest on real estate* that is created with the consent of the owner of the real estate." (Emphasis added.)); ORS 105.170(1) ("'Easement' means a nonpossessory *interest in the land* of another which entitles the holders of an interest in the easement to a private right of way, embodying the right to pass across another's land." (Emphasis added.)); *Edwards v. Perkins*, 7 Or 149, 151 (1879) (although a lease is an interest in property, it is not a conveyance).

If, as DLCD argues, a "conveyance" within the meaning of ORS 195.328(3) means a transfer of any interest in land, a party that leased or mortgaged the subject property would not be permitted to use his or her original acquisition date for purposes of Measure 49. *That* is clearly contrary to the purpose of Measure 49. Instead, it is much more likely that the reference to the word "conveyed" in ORS 195.328(3) was intended to refer to the conveyance of legal title as set out under ORS chapter 93.

With that in mind, it becomes clear that ORS 195.328(3) lends no support for DLCD's proposed reading of the definition of "owner" in ORS 195.300(18). Because Burke had not "conveyed" legal title to Educative, ORS 195.328(3) is simply inapplicable. Under ORS 195.328(1), Burke's acquisition date would continue to be his original acquisition date in 1967. Nothing in ORS 195.328 indicates that the voters intended the seller in a land sale contract who retains legal title to lose his status as an owner under ORS 195.300(18).

19

DLCD finally insists that the legislative history of Measure 49 "demonstrates that Burke is not an owner." The department relies on a phrase in the explanatory statement contained in the 2007 Voters' Pamphlet stating that Measure 49 "modifies Measure 37 to give landowners who have filed Measure 37 claims *the right to build homes* as compensation for land use regulations imposed after they acquired their properties." Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (emphasis added). DLCD asserts that, because "a land sale contract seller has no right to build on the claim property," allowing Burke to receive Measure 49 relief would go directly against the policy that animates the measure and the intentions of the voters.

That, however, consists of little more than the same argument that DLCD asserts on the basis of the legislative findings in ORS 195.301. And, as such, it suffers the same flaws. Indeed, the argument is essentially circular, for it assumes that the seller on a land sale contract cannot be a "landowner who ha[s] filed [a] Measure 37 claim." In point of fact, in this case, Burke and Educative filed their Measure 37 claim when Burke retained both title and possession of the premises.

In short, there is no persuasive evidence that the voters intended the three categories of owners under ORS 195.300(18) to be mutually exclusive. To the contrary, the phrasing of that definition, along with other definitions in the same section, and other related provisions of the law make clear that those definitional components were intended to be inclusive. We therefore conclude that the Court of Appeals erred in holding that Burke is not an owner of the subject property. Under ORS 195.300(18)(a), Burke is an "owner," because he holds legal title to the property. Under ORS 195.300(18)(b),

20

Educative is also an owner, because it is the purchaser of the property under a recorded land sale contract.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

KISTLER, J., dissenting.

The majority holds that both the seller and the purchaser on a land sale contract are "owners" for the purposes of Ballot Measure 49. In reaching that conclusion, the majority starts from the proposition, with which I agree, that the definition of "owner" in Measure 49 is ambiguous. It is possible to read that definition either as the seller and the purchaser do (owner includes both the seller and the purchaser) or as the state does (in the context of a land sale contract, owner means only the purchaser). The majority errs, however, in resolving that ambiguity. It appears to derive certainty from sources that, in themselves, merely confirm the ambiguity, and it discounts context that demonstrates that the three categories of owners described in the definition are mutually exclusive. I would hold, as both the trial court and the Court of Appeals did, that, in a land sale contract, only the purchaser is the owner.

ORS 195.300(18) defines "owner" for the purposes of Measure 49. It provides,

"'Owner' means:

"(a) The owner of fee title to the property as shown in the deed records of the county where the property is located;

"(b) The purchaser under a land sale contract, if there is a recorded land sale contract in force for the property; or

"(c) If the property is owned by the trustee of a revocable trust, the settlor of a revocable trust, except that when the trust becomes irrevocable only the trustee is the owner."

In the parties' view, the meaning of that definition turns on the word "or." The state argues that "or" signifies that the three categories of owners set out in the definition are

1

mutually exclusive.  A person can come within only one of them.  Because this case involves a recorded land sale contract, the state reasons that only the purchaser is the owner.  The purchaser and the seller, for their part, recognize that "or" is disjunctive but contend that the alternatives it joins are not mutually exclusive.  In their view, both paragraphs (a) and (b) define who is an owner under a land sale contract.  They argue that, because the seller under a land sale contract retains fee title, the seller is an owner under paragraph (a), and that the purchaser is an owner under paragraph (b).[1]

In resolving that issue, the majority starts correctly.  It notes that "or" is ambiguous.  It may join mutually exclusive choices.  Alternatively, it may be used in an inclusive sense; that is, "or" may join choices that are not necessarily mutually exclusive.  Having determined that "or" may be used either way, the majority concludes, correctly I believe, that "[w]hether the disjunctive 'or' is inclusive or exclusive will depend on its context."  At that point, however, the majority appears to take a wrong turn.  It appears to presume that "or" is used inclusively unless the legislature either expressly states otherwise or the choices that "or" connects are necessarily mutually exclusive.

In this case, once we conclude, as the majority does, that "there is nothing very plain about the use of the connective 'or,'" then we should look to the text of the

---

[1]    The difference matters because only a person who owns property can bring a claim under Measure 49 to build homes on the property.  *See* Or Laws 2007, ch 424, § 6(6)(a).  Moreover, to establish a claim under Measure 49, the claimant must show that, on the date that the claimant acquired the property, the claimant "was permitted to establish at least the number of lots, parcels or dwellings on the property that are [now] authorized" under Measure 49.  *Id.* § 6(6)(f).

2

definition, the definition's context, and its legislative history to determine its meaning. Those sources lead me to conclude that the three paragraphs that comprise the definition of owner identify three discrete categories of owners. Each category is self-contained; none bleeds over into the other. Paragraph (a) sets out the general rule: "'[o]wner' means * * * [t]he owner of fee title to the property." Paragraphs (b) and (c) define what "owner" means in two discrete contexts: when there is a recorded land sale contract and when there is (or was) a revocable trust.

The text of the definition is at odds with the majority's interpretation of it. Paragraph (b) provides that "'[o]wner' means * * * [t]he purchaser under a land sale contract, if there is a recorded land sale contract in force for the property." The text of that paragraph identifies only one owner when there is a recorded land sale contract. If there is a recorded land sale contract in force for the property, then "'[o]wner' means * * * [t]he purchaser." Conversely, if there is no recorded land sale contract in force (or no revocable trust), then "[o]wner means * * * [t]he owner of fee title to the property."

If the drafters of Measure 49 had intended the meaning that the majority draws from the definition, presumably they would have said that "'[o]wner' means * * * the purchaser [and the seller] under a land sale contract, if there is a recorded land sale contract in force for the property." Or they would have said that "'[o]wner' [includes] * * * [t]he purchaser under a land sale contract," if they had intended that paragraph (a) would also apply if there is a recorded land sale contract. The drafters, however, did not take either of those courses. In my view, the text of paragraph (b) is difficult to square with the majority's conclusion that paragraph (b) does not provide a complete definition

3

of "owner" when there is a recorded land sale contract.

Paragraph (c) is consistent with that conclusion. That paragraph sets out the rule for identifying who owns property held in a revocable trust. The first sentence of paragraph (c) states that, "[i]f the property is owned by the trustee of a revocable trust, [then 'owner' means] the settlor of [the] revocable trust." Paragraph (c) also provides that, if the trust has become irrevocable, then "only the trustee is the owner." It may be that, under the terms of paragraph (c), both the trustee and the settlor of a revocable trust are "owners" for the purposes of Measure 49. However, the more important lesson to draw from paragraph (c) is that that paragraph is a complete thought. That is, the references to the trustee as an "owner" within paragraph (c) reveal who is an owner when there is a revocable trust, without any need to look to paragraph (a) to supplement the definition in paragraph (c).

The texts of paragraphs (b) and (c) define who is an owner for the purposes of Measure 49 in two discrete contexts -- land sale contracts and revocable trusts. Each paragraph stands alone. The majority errs in relying on paragraph (a) to supplement what the text suggests are complete definitions in paragraphs (b) and (c). Two related but separate contextual clues support that conclusion. The first is the common-law understanding of who is an owner under a land sale contract. *See Klamath Irrigation District v. United States*, 348 Or 15, 23, 227 P3d 1145 (2010) (explaining that the context for interpreting a statute's text includes the preexisting common law and statutory framework within which the law was enacted).

Before the voters adopted Measure 49, this court's cases made clear that, in

4

a land sale contract, the purchaser "*is looked upon and treated as the owner of the land*." *City of Reedsport v. Hubbard*, 202 Or 370, 390, 274 P2d 248 (1954) (emphasis in original) (internal quotation marks omitted).  By contrast, the seller in a land sale contract retains only a limited interest: "(1) the right to receive contract payments, and (2) the legal title in the property securing the purchaser's obligation to make the contract payments, with the concomitant possibility of resuming general ownership of the land upon default."  *Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991) (internal quotation marks omitted).  As the quotation from *Bedortha* makes clear, the seller in a land sale contract does not retain "general ownership" of the land.  Rather, the seller retains title to the land only as security.

This court's cases consistently have recognized that, as a general rule, "[u]nder an executory contract for the sale and purchase of land the [purchaser] is treated in all respects as the owner of the property."  *City of Reedsport*, 202 Or at 390; *see also Thienes v. Francis*, 69 Or 171, 179, 138 P 345 (1914) (explaining that the relationship between the purchaser and seller under a land sale contract is "analogous to that of mortgagor and mortgagee").  Admittedly, even though this court stated in *City of Reedsport* that the purchaser under a land sale contract is treated "in all respects as the owner of the property," it later reaffirmed that there are exceptions to that general rule.  *See Heider v. Dietz*, 234 Or 105, 115, 380 P2d 619 (1963).  For example, when the seller under a land sale contract is a judgment debtor, the judgment lien attaches to the seller's interest in the land.  *Id.*; *see Bedortha*, 312 Or at 313 (reaffirming that, in a land sale contract, the title to the property and the seller's right to receive contract payments are

5

subject to a judgment creditor's lien).  As the court explained in *Heider*, "equity [will not] suffer the holder of the vendor's interest to work a forfeiture [of the judgment creditor's rights] by applying the doctrine of equitable conversion under facts making such application clearly improper."  234 Or at 116.

In providing a definition of owner for Measure 49, paragraph (b) of ORS 195.300(18) adopts the general common-law rule that the purchaser is the owner under a land sale contract.  It does not adopt one or some of the exceptions to that rule.  It does not recognize that, in some limited circumstances, the seller will be regarded as the owner.  By contrast, if the majority were correct that paragraph (a) also defines who is an owner under a land sale contract, then the seller under a land sale contract would always be an "owner" of the property.  That is so even though, under the common law, the seller would be regarded as the owner only in limited circumstances and only when necessary to avoid an inequitable result.[2]  Without some evidence that the drafters of Measure 49 intended to depart from the common-law rule, we should be hesitant to use the general

_____

[2]    To the extent that the majority finds support in *Heider* for its contrary position, it reads that case for more than it is worth.  The question in *Heider* was whether an earlier case correctly had stated that equitable conversion "invariably applies whenever real property is sold under a title-retaining contract."  234 Or at 111.  In holding that that statement was too broad, *Heider* recognized exceptions to the general rule.  It did not do more than that, however.  The majority also observes that, even if the common law regarded the purchaser as the owner for most purposes, the legislature is always free to define words to mean anything that it intends them to mean.  While true, that reasoning assumes away the issue.  It assumes that the legislature intended "owner" to mean both the purchaser and the seller under a land sale contract when the question is whether that was what the legislature meant.  The common law that preceded the adoption of Measure 49 bears on that issue, or it should.

6

definition of owner set out in paragraph (a) to supplement the definition of owner in paragraph (b), which specifically addresses who is the owner under a land sale contract. Put differently, the specific should control over the general.

Another contextual clue points in the same direction. Under Measure 49, only an owner can be a "claimant" -- that is, only an owner can claim a right under Measure 49 to build three houses on land that the claimant owns. *See* Or Laws 2007, ch 424, § 6(6)(a). The right that Measure 49 grants "owners" does not fit comfortably with the majority's conclusion that the seller on a land sale contract is an owner within the meaning of ORS 195.300(18). Ordinarily, the seller on a land sale contract retains no right either to subdivide the property that he or she has sold or to build anything on it. *See Bedortha*, 312 Or at 311 (listing the rights that a seller retains under a land sale contract). Under the majority's interpretation, the right that Measure 49 grants sellers under land sale contracts is a right that they no longer have the ability to exercise.

The same point may be made another way. Suppose that a purchaser under a land sale contract obtained and exercised the right under Measure 49 to build three homes on the property. Only the purchaser would be entitled to receive the income resulting from those homes. *See City of Reedsport*, 202 Or at 389 ("Under the law of this state, [the seller] is not entitled to the rents and profits in the use of * * * premises [being purchased under a land sale contract] while [the purchaser] was lawfully entitled to and was in possession thereof under his contract."). The seller, for its part, would be entitled only to receive the payments that the purchaser promised to make under the land sale contract. *See Bedortha*, 312 Or at 313. It is difficult to see why the seller would be

7

regarded as an "owner" of the property under Measure 49 when the seller ordinarily would have no right to any economic benefit flowing from the rights Measure 49 grants owners.[3] The majority's conclusion that paragraph (a) defines who is an owner under a land sale contract results in an anomaly.

The legislative history of Measure 49 is consistent with its text and context. Both the ballot title summary and the explanatory statement in the voters' pamphlet told voters that Measure 49 "[m]odifies Measure 37 (2004) to give landowners with Measure 37 claims the right to build homes as compensation for land use restrictions imposed after they acquired their properties." Voters' Pamphlet, Special Election, Nov 6, 2007, 7 (ballot title summary); *see id.* at 19 (explanatory statement). Consistent with the text and context of Measure 49, the voters' pamphlet twice told voters that Measure 49 gave landowners the right to build homes on their property. *Cf. Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560 n 8, 871 P2d 106 (1994) (the legislative history of an initiated measure includes the ballot title); *State v. Guzek*, 322 Or 245, 274, 906 P2d 272 (1995) (the legislative history of an initiated measure includes the explanatory statement). The proposition that, under Measure 49, a landowner has the right to build on his or her property is difficult to square with the majority's conclusion that "owner" includes the seller on a land sale contract; as noted, the seller under a land

---

[3] To be sure, the parties to a land sale contract could always choose to allocate any economic benefits flowing from the development of the property differently. But, as a general rule, the seller has no right to receive such benefits. *See City of Reedsport*, 202 Or at 389.

8

sale contract ordinarily has no right to build anything on the property he or she has sold.

To be sure, it is possible to say, as the majority does, that a seller on a land sale contract can exercise the right to build houses on the land derivatively through the purchaser. But that seems a strained way to interpret the text, context, and legislative history of the statutory definition of owner. The more natural reading of ORS 195.300(18)(b) is that it means what it says: If there is a recorded land sale contract in force, then "'[o]wner means * * * [t]he purchaser under [the] land sale contract." Only the purchaser under a land sale contract has the right to subdivide and build on the land that he or she has acquired, and only the purchaser has the right to enjoy the economic benefits flowing from developing the land that he or she has purchased.

In my view, the better way to resolve the ambiguity in the definition of owner is to recognize that paragraph (a) provides the general definition of owner and that paragraphs (b) and (c) provide complete definitions of owner in two limited situations -- when there is a land sale contract and when there is a revocable trust. That interpretation gives effect to the conditions stated in the text of paragraphs (b) and (c). It also gives effect to the well-recognized common-law understanding that, in land sale contracts, the purchaser is the owner. And it avoids the anomaly of saying that a seller under a land sale contract is the owner for the purposes of Measure 49 even though the seller cannot unilaterally exercise the rights that Measure 49 grants owners and ordinarily cannot profit from the purchaser's exercise of those rights. I would affirm the trial court's judgment and the Court of Appeals decision. Accordingly, I respectfully dissent.

Linder, J., joins in this opinion.

9