Submitted March 23, affirmed May 25, petition for review denied October 6, 2022 (370 Or 303)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY TABIAS ACTKINSON,
*Defendant-Appellant.*

Clackamas County Circuit Court
18CR67732; A172693

511 P3d 444

Defendant appeals a judgment of conviction for the unauthorized use of a motor vehicle. ORS 164.135. After the trial court found defendant guilty, he asked the court to impose a downward departure sentence. After ordering a presentence investigation report (PSI), the court concluded that under ORS 137.717(6)(a)—a provision of the Repeat Property Offender Statute—defendant was ineligible for a downward departure sentence because he had been on probation for first-degree theft when he committed the crime at issue here. On appeal, defendant challenges that conclusion. He asserts that, because his first-degree theft was sentenced as a misdemeanor, rather than as a felony, ORS 137.717 (6)(a) does not disqualify him from receiving a downward departure sentence. *Held*: The trial court did not err. Nothing in the text, context, or legislative history of the statute indicates that it was intended only to apply to property offenses sentenced as felonies. When defendant committed an offense listed in ORS 137.717, and the trial court placed trust in the defendant by treating the offense as a misdemeanor, rather than as a felony, it was the violation of that trust—namely, the commission of another listed property offense while on supervision for the previous offense—that disqualified defendant from receiving a downward departure sentence, not the nature of the sentence that resulted in defendant being placed on supervised release in the first instance.

Affirmed.

Jeffrey S. Jones, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for the unauthorized use of a motor vehicle.[1] He argues that he did not knowingly waive his right to a jury trial and that the trial court erred in ruling that he was not eligible for a downward departure sentence. Our decision in *State v. Austin*, 316 Or App 56, 57, 501 P3d 1136 (2021), answers the first issue defendant raises. We write to address the second issue and affirm the trial court's judgment.

After the trial court found defendant guilty of unauthorized use of a motor vehicle, defendant asked the court to impose a downward departure sentence; that is, he asked the court to impose a lesser sentence than the presumptive sentence. *Cf. State v. Speedis*, 350 Or 424, 428-29, 256 P3d 1061 (2011) (discussing presumptive and departure sentences). Because defendant also disputed his criminal history, the state asked the court to order a presentence investigation report (PSI) to help resolve that dispute. The state noted, however, that a PSI would not be necessary if the court agreed that ORS 137.717(6)(a) disqualified defendant from receiving a downward departure sentence because he had been on probation for first-degree theft when he committed his current crime of unauthorized use of a motor vehicle.

Defendant, for his part, did not dispute at the sentencing hearing that he had been on probation for first-degree theft when he unlawfully used a motor vehicle. He also did not dispute that, if he had been on probation for first-degree theft, sentenced as a felony, he would be ineligible for a downward departure sentence under ORS 137.717 (6)(a). He observed, however, that he had been on probation for first-degree theft, sentenced as a misdemeanor, when he committed his current crime.[2] It followed, he argued, that

---

[1] Defendant was also charged with possession of a stolen vehicle. According to the judgment, the court merged that count into the count for unauthorized use of a vehicle and disposed of the stolen vehicle count with no conviction.

[2] First-degree theft is a Class C felony. ORS 164.055(3). However, even when a defendant is found guilty of a Class C felony, a trial court retains discretion to enter a judgment of conviction for a Class A misdemeanor if the circumstances of the offense and the history and character of the offender would make a felony conviction "unduly harsh." ORS 161.705. Additionally, when a defendant has been

ORS 137.717(6)(a) did not disqualify him from receiving a downward departure sentence. In his view, the trial court retained discretion to impose a lesser sentence.

Initially, the trial court declined to decide whether ORS 137.717(6)(a) precluded defendant from receiving a downward departure sentence "without further input from the presentence reporter." The court accordingly ordered that a PSI be prepared. Several weeks later, the court received the PSI, which detailed defendant's background, listed at least 43 prior convictions, and set out the circumstances surrounding his current conviction. The report concluded that defendant was subject to sentencing under the Repeat Property Offender Statute. It stated, "This statute, ORS 137.717 and HB 3078, mandates a minimum term of incarceration of 30 months followed by [a] 2 year [period of] Post Prison Supervision."

Having considered the PSI and the parties' arguments, the trial court ruled:

> "[Y]ou know, looking through the [PSI], that's one of the longest criminal histories that I have seen, and the presentence reporter's recommending that this be a custody sentence because of his track record, and I agree with his line of thinking."

The court did not explain its ruling further and imposed, as the PSI had recommended, a 30-month sentence followed by two years of post-prison supervision.

On appeal, the parties debate the basis for the court's ruling. Defendant argues that the trial court concluded, incorrectly in his view, that ORS 137.717(6)(a) disqualified him from receiving a downward departure sentence. The state contends initially that the trial court assumed that defendant was eligible for a downward departure sentence but, given defendant's extensive criminal record, exercised its discretion to impose the presumptive sentence instead. Alternatively, the state argues that ORS 137.717(6)(a) disqualified defendant from receiving a downward departure

charged with a nonperson Class C felony, the district attorney can elect to treat it as a Class A misdemeanor. ORS 161.570. The record does not disclose which of those two statutes led to defendant's conviction for first-degree theft being sentenced as a misdemeanor.

sentence because he was on probation for first-degree theft when he committed the crime of unauthorized use of a motor vehicle. Before explaining how we interpret the trial court's ruling, we first describe ORS 137.717. We then discuss the basis for the court's ruling and finally explain why we affirm its judgment.

ORS 137.717 sets out sentencing rules for repeat property offenders. Subsection (1) of that statute identifies presumptive sentences for certain property crimes, including the crime for which defendant was convicted—the unauthorized use of a motor vehicle. *See* ORS 137.717(1)(b) (presumptive sentence for unauthorized use of a motor vehicle). Subsection (3) provides that the presumptive sentences set out in paragraphs (1)(a) and (b) shall be increased by two months for each previous conviction for certain property crimes listed in subsections (1) and (2). Subsection (4) authorizes courts to impose greater sentences than the presumptive sentences specified by subsections (1) and (3) while subsection (6) provides when a court shall impose at least the presumptive sentence and when it can impose lesser sentences.

Specifically, subsection (6) provides:

"The court shall sentence a person under this section to at least the presumptive sentence described in subsection (1) (a) or (b) or (3) of this section, unless the parties stipulate otherwise or the court finds that:

"(a)   The person was not on probation, parole or post-prison supervision for a crime listed in subsection (1) of this section at the time of the commission of the current crime of conviction;

"(b)   The person has not previously received a downward departure from a presumptive sentence for a crime listed in subsection (1) of this section;

"(c)   The harm or loss caused by the crime is not greater than usual for that type of crime; and;

"(d)   In consideration of the nature of the offense and the harm to the victim, a downward departure will:

"(A)   Increase public safety;

"(B)  Enhance the likelihood that the person will be rehabilitated; and

"(C)  Not unduly reduce the appropriate punishment."

ORS 137.717(6).

With that background in mind, we begin by considering the basis for the trial court's sentencing ruling. ORS 137.717(6) authorized the trial court to impose a downward departure sentence only if the parties either stipulated to doing so or if the court made the four findings set out in ORS 137.717(6)(a) to (d). Neither of those events occurred. Moreover, the trial court did not state expressly that, even if it had discretion to impose a downward departure sentence, it would decline to do so given defendant's extensive criminal history. Rather, it found the PSI persuasive, which stated that the Repeat Property Offender Statute "mandates" a 30-month sentence.[3] As we interpret the trial court's ruling, it implicitly found that defendant was ineligible for a downward departure sentence under ORS 137.717(6).

We accordingly turn to defendant's argument that ORS 137.717(6)(a) does not disqualify him from receiving a downward departure sentence.[4] On that issue, defendant notes that ORS 137.717(6)(a) disqualifies him from receiving a downward departure sentence only if he was on probation, parole, or post-prison supervision for one of the offenses listed in subsection (1). He also notes that "[t]heft in the first degree under ORS 164.055," one of the offenses listed in subsection (1), is classified as a Class C felony. *See* ORS 164.055(3). Defendant recognizes that a conviction for first-degree theft can be sentenced either as felony or a misdemeanor. *See* ORS 161.705 (authorizing trial courts to reduce Class C convictions to Class A misdemeanors); ORS 161.570 (authorizing prosecutors to treat nonperson Class C felonies as Class A misdemeanors). However, he argues that,

___

[3] Neither the state nor defendant disputes that, under ORS 137.717(1) and (3), the trial court correctly concluded that the presumptive sentence for defendant's unauthorized use of a motor vehicle was 30 months in custody.

[4] The parties do not address whether any of the other three factors set out in ORS 137.717(6) precludes a downward departure sentence, independently of any finding on the factor set out in ORS 137.717(6)(a). We need not resolve that issue since we agree with the state that, in this case, ORS 137.717(6)(a) disqualified defendant from receiving a downward departure sentence.

when ORS 137.717(6) refers to being on probation, parole, or post-prison supervision for "[t]heft in the first degree," it is referring to first-degree theft sentenced as a felony, not as a misdemeanor. Defendant's argument presents a question of statutory interpretation.

What is now codified as ORS 137.717(6) finds its source in an act referred to the voters. *See* Or Laws 2008, ch 14, §§ 7, 15 (enacting ORS 137.717(6) as part of Senate Bill (SB) 1087 (2008) and referring that act to the voters). The voters adopted that act, and our goal is to discern their intent. *Burke v. DLCD*, 352 Or 428, 432-33, 290 P3d 790 (2012). In doing so, we consider "the text of the statute in context, along with any relevant legislative history." *Id.* The legislative history of a referred act consists of the materials publicly available to the voters—"the measure itself, the ballot title, [and] the Voters' Pamphlet explanations of the measure," as well as contemporaneous media accounts. *City of Portland v. Smith*, 314 Or 178, 190, 838 P2d 568 (1992); *see also Ericsson v. DLCD*, 251 Or App 610, 621, 285 P3d 722 (2012). It also includes statements made in the legislative committee hearings that led to the referral, although those statements may have only limited weight depending on, among other things, their clarity. *State v. Lane*, 357 Or 619, 634, 355 P3d 914 (2015).

We begin with the text and context of ORS 137.717(6). Because the statute's context illuminates its text, we first set out the relevant context and then interpret the text in light of that context. *Cf. Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (explaining that text "should not be read in isolation but must be considered in context"). When the 1971 legislature enacted the current criminal code, it redefined the crime of theft. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 123 (July 1970). Specifically, it eliminated most common-law variations on theft and combined those common-law crimes into first- and second-degree theft, which it distinguished by the value of the property taken. *Id.* §§ 123-25. The 1971 legislature provided that first-degree theft is a Class C felony, Or Laws 1971, ch 743, § 125, and it simultaneously authorized trial courts to enter convictions for offenses classified as Class C

felonies as Class A misdemeanors, *id.* § 80. It follows that, since 1971, a defendant found guilty of the redefined crime of first-degree theft can be sentenced either for a felony or a misdemeanor.[5] That is, depending on the circumstances of the offense and the offender, either felony or misdemeanor treatment can apply.

With that context in mind, we turn to the text of ORS 137.717. Two different parts of the text, read in context, bear on the issue that defendant raises. ORS 137.717 (6)(a) prohibits downward departures for defendants who committed their current crimes while on probation, parole, or post-prison supervision for "[t]heft in the first degree under ORS 164.055." *See* ORS 137.717(6)(a) (cross-referencing ORS 137.717(1)(c)). The texts of both ORS 137.717(6)(a) and the statute it cross-references, ORS 137.717(1)(c), do not disqualify a defendant from receiving a downward departure sentence only if the defendant committed his or her current crime while on probation, parole, or post-sentence supervision for "[t]heft in the first degree," sentenced as a felony. Rather, the text of the statutory disqualification applies to all prior convictions for "[t]heft in the first degree," regardless of whether that offense had been sentenced as a felony or a misdemeanor.

Another part of ORS 137.717(6)(a)'s text bears on defendant's argument. ORS 137.717(6)(a) prohibits imposing a downward departure sentence when a defendant commits his or her current property crime while on "probation, parole or post-prison supervision" for one of the property crimes listed in subsection (1). Each term in the phrase "probation, parole or post-prison supervision" shares a common thread. Each term refers to a period of time when a defendant is on release in the community for one of the property crimes listed in ORS 137.717(1); that is, the three terms collectively identify a concern at the heart of ORS 137.717(6)(a)— committing a property crime listed in paragraph (1)(a) or (b) while on supervised release in the community for any of the property crimes listed in subsection (1). It is the violation

---

[5] Later, in 2003, the legislature authorized district attorneys to treat nonperson Class C felonies as misdemeanors. *See* Or Laws 2003, ch 645, § 2, codified as ORS 161.570.

of that trust—namely, the commission of another property offense while on supervision for a listed property offense—that disqualifies a defendant from receiving a downward departure sentence, not the nature of the sentence (a misdemeanor or a felony) that resulted in the defendant's being placed on supervised release in the first instance.[6] As we read the text and context of ORS 137.717(6)(a), the relevant question is whether a defendant was on probation, parole, or post-prison supervision for "[t]heft in the first-degree," not whether that offense had been treated as a felony or a misdemeanor.

The legislative history of ORS 137.717(6) is consistent with the statute's text and context. In 2008, the legislature passed SB 1087 and provided that the act be submitted to the people for their approval or rejection at the next general election. Or Laws 2008, ch 14, § 15.[7] SB 1087 was a comprehensive enactment that rested on the proposition that repeat property crimes are linked to drug addiction. *See id.* §§ 1-3. To address that problem, SB 1087 increased penalties for drug crimes, provided for drug treatment for addicted offenders, increased presumptive sentences for repeat property offenders, and limited the courts' ability to impose downward departure sentences. *See id.* §§ 2, 3, 6, and 9. As one part of that effort, SB 1087 amended existing sections of ORS 137.717 and added what is now codified as ORS 137.717(6). *Id.* § 7.

The Secretary of State placed the referred act on the November 2008 ballot as Measure 57. *See* Official Voters' Pamphlet, General Election, Nov 4, 2008, 26. The caption for the ballot title read: "Increases sentences for drug trafficking, theft against elderly and specified repeat property

---

[6] We note that the statutory phrase "probation, parole or post-prison supervision" is broad enough to include both misdemeanors and felonies; that is, both misdemeanors and felonies can result in probation. *See* ORS 137.010. By contrast, if the disqualification applied only to the commission of a property crime while on "post-prison supervision" for another crime, then the disqualification would be limited to the commission of a current crime while on supervision for a listed property crime sentenced as a felony: After all, only offenses sentenced as felonies can result in post-prison supervision. *See* OAR 213-005-0002(1) (defining post-prison supervision as part of a felony sentence).

[7] SB 1087 refers to itself as an act. However, the Governor did not sign it, and it appears to be more in the nature of a joint House and Senate resolution.

and identity theft crimes; requires addiction treatment for certain offenders." The summary explained that the measure, if passed, would increase prison sentences for, among other things:

> "Repeat offenses of [various property crimes]: 18-30 months or 24-36 months, depending on seriousness of crime and number of past convictions.

> "This measure also requires treatment for certain addicted offenders at risk of reoffending; imposes sanctions for those who refuse treatment. *Limits court's ability to reduce sentences.*"

*Id.* (emphasis added).

A competing measure, Measure 61, was also on the ballot and would have imposed mandatory minimum sentences on persons who committed certain property offenses. *See id.* at 85.[8] Most of the arguments for and against Measure 57 focused on whether Measure 57 or Measure 61 provided a more effective way of eliminating repeat property crimes. Proponents of Measure 57 lauded pairing treatment with accountability—that is, requiring treatment for first time offenders and then increasing the penalty for repeat offenses while limiting the courts' ability to impose downward departure sentences. *Id.* at 32-40. Opponents of Measure 57 (and presumably proponents of Measure 61) generally argued that a "catch and release" model of treatment for first time offenders, rather than a mandatory minimum sentence, provided little disincentive for committing property crimes. *Id.* at 40-42.

The publicly available history of Measure 57 did not specifically address the issue that defendant raises here—whether a defendant who committed a property crime while on supervision for a listed property crime would be disqualified from receiving a downward departure sentence only if the earlier crime had been treated as a felony. However, the ballot caption, the summary, and the arguments for and against the measure all focused on holding defendants who

---

[8] Measures 57 and 61 conflicted. As a result, if both measures passed, the measure receiving more votes would go into effect. *See* Voters' Pamphlet at 26 (so stating).

committed repeat property offenses accountable. It was the repeated commission of property offenses that mattered, not whether the prior offense initially had been treated as a felony rather than a misdemeanor. Indeed, if a prosecutor or a court had placed their trust in a defendant by treating the initial property crime as a misdemeanor and by also putting the defendant on supervised release in the community, then the breach of that double measure of trust provided an even greater reason for disqualifying the defendant from receiving a downward departure for his or her current crime. In short, the publicly available history of the referred act is consistent with and supports the state's interpretation of ORS 137.717(6)(a).

We also may consider statements made in legislative committee hearings that led to the act's being referred to the voters. *Lane*, 357 Or at 634. We have examined the legislative history of SB 1087 and have not found anything that would cause us to depart from the conclusion that we draw from the text, context, and publicly available history of ORS 137.717(6)(a).[9] Most of the discussion that preceded the adoption of SB 1087 focused on the need to limit repeat property offenders, as the ballot title and the arguments for and against Measure 57 later did. *See* Tape Recording, Senate Committee on Judiciary, SB 1087, Feb 7, 2008, Tape 1, Side A (testimony of Raul Ramirez and Scott Taylor); Exhibit B, Senate Committee on Judiciary, SB 1087, Feb 7, 2008 (statement of Scott Taylor). The only statement that provides even arguable support for defendant's position comes from a passing remark that Joe O'Leary, the Public Policy Safety Advisor for the Governor's Office, made about a related but separate section of ORS 137.717. *See* Tape Recording, Joint Committee on Ways and Means, SB 1087, Feb 19, 2008, Tape 28, Side B (testimony of Joe O'Leary).

In discussing what appears to be ORS 137.717(1)(a)(C), O'Leary observed that the offenses listed in ORS 137.717(2) are classified as felonies.[10] Not only was O'Leary apparently

---

[9] Defendant, for his part, has not identified any legislative history that would support his interpretation of ORS 137.717(6)(a).

[10] O'Leary did not tie his observation to a specific subsection of ORS 137.717. However, the statutory details he mentioned correspond with ORS 137.717 (1)(a)(C), not ORS 137.717(6)(a).

discussing ORS 137.717(1)(a)(C), not ORS 137.717(6)(a), but his remark adds little to the analysis. There is no dispute that ORS 164.055, one of the property crimes listed in ORS 137.717(1) is a Class C felony.[11] The question in this case, which O'Leary's remark did not address, is whether ORS 137.717(6)(a) disqualifies a defendant from receiving a downward departure if he or she commits a property crime while on supervised release for a Class C felony listed in subsection (1) that the judge or prosecutor elected to treat as a misdemeanor. Although we are not precluded from considering O'Leary's remark in determining what ORS 137.717 (6)(a) means, O'Leary's unrelated observation about another section of ORS 137.717 provides no reason to depart from the conclusion that we draw from the text, context, and the other legislative history of ORS 137.717(6)(a)—namely, a defendant who commits his or her current property crime while on supervised release for one of the property crimes listed in ORS 137.717(1) will be disqualified from receiving a downward departure sentence even though the judge or the prosecutor treated the earlier crime as a Class A misdemeanor.

Affirmed.

---

[11] ORS 137.717(2), which O'Leary mentioned, is largely redundant. It lists the crimes in ORS 137.717(1), which is the subsection referenced in ORS 137.717(6)(a).