Filed 4/30/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| JAY DOW, as Trustee, etc., | C090304 |
| Plaintiff and Appellant, | (Super. Ct. No. 4573) |
| v. | |
| HONEY LAKE VALLEY RESOURCE CONSERVATION DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Lassen County, David L. DeVore, Judge. (Retired Judge of the Alpine Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.). Affirmed.

Brownstein Hyatt Farber Schreck, Bradley J. Herrema and Brooke M. Wangsgard for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Scott A. Morris and William T. Chisum for Defendant and Respondent Lassen Irrigation Company.

Lozano Smith and Mark W. Waterman; Harper & Burns and William P. Curley for Defendant and Respondent Honey Lake Valley Resource Conservation District.

In law, semantics matter. Courts must frequently ascertain the meaning of words and phrases in writings. The use of the word "or" often presents an especially treacherous lexical conundrum due to its high risk of ambiguity. (See *South Trust Bank v. Copeland One, L.L.C.* (Ala. 2003) 886 So.2d 38, 42 [" ' "*Every* use of 'and' or 'or' as a

1

conjunction involves *some* risk of ambiguity." [Citation.] Thus, in the main text of *Words and Phrases* (1953) -- excluding pocket parts -- the word "and" takes up 61 pages of digested cases interpreting it in myriad ways, and the word "or" takes up another 84 pages of digested cases interpreting it in an equally broad array of senses' "].) "The fact *is* that there is nothing very plain about the use of the connective 'or' in legal drafting." (*Burke v. State* (2012) 352 Ore. 428, 435 [290 P.3d 790, 793], italics added.) " 'Sometimes it joins alternatives; sometimes it doesn't. Sometimes *or* means *and*; sometimes it doesn't[].' " (*Id*. at pp. 793-794.) Additionally, if "or" is a disjunctive connector, sometimes it connects words in the inclusive sense (i.e., A or B, or both); other times, it connects words in the exclusive sense (i.e., A or B, but not both). (*Id*. at p. 794.) Thus, the potential ambiguity created by "or" is not one-dimensional.

In *Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766 (*Dow I*), we resolved one of the foregoing ambiguities as to "or" in the following portion of paragraph 21 of the 1940 Susan River Water Right Decree (decree) (the paragraph 21 exception): "<u>except further</u>, that Lassen Irrigation Company shall be entitled to divert, *or* store up to the present capacity of its reservoirs, estimated at 31,500 acre-feet, from the natural flow of Susan River between March 1 and July 1 of each year when the flow of said Susan River is in excess of 20 cubic feet per second . . . ." (*Id*. at p. 778, italics added.) We concluded, by recognizing the use of the two commas created a parenthetical phrase and giving the "or" its more ordinary meaning (as a choice between alternatives), that portion of paragraph 21 means, subject to the limitations set forth therein, "the Irrigation Company 'shall be entitled to' (1) 'divert . . . from the natural flow of Susan River' 'or' (2) 'store up to the present capacity of its reservoirs, estimated at 31,500 acre-feet' 'from the natural flow of Susan River.' " (*Id*. at p. 784.) In other words, we concluded the "or" was intended to function as a disjunctive connector. We are now called upon to address a second ambiguity created by the same "or."

Jay Dow, as trustee for the Dow-Bonomini 2013 Family Trust (the trust), appeals from the trial court's denial of the trust's motion challenging the decision of Honey Lake

2

Valley Resources Conservation District, serving as the watermaster administering the decree (the watermaster), finding Lassen Irrigation Company (the Irrigation Company) may simultaneously exercise its rights to divert and store water, as provided in the paragraph 21 exception. The trust asserts the watermaster's and trial court's interpretation of the paragraph 21 exception conflicts with the principles of law espoused in *Dow I* and is unreasonable given the plain language of the decree, resulting in absurdity and unfairness. In sum, the trust believes the "or" must be read in the exclusive sense such that the Irrigation Company may exercise only one of its rights at a time.

We conclude the "or" in the paragraph 21 exception is appropriately interpreted to apply in the inclusive sense. We thus affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We recite only the facts pertinent to the disposition of this appeal. Additional background facts are set forth in *Dow I*. (*Dow I*, *supra*, 216 Cal.App.4th at pp. 768-780.)

I

*The Irrigation Company's Rights Under The Decree*

"The Irrigation Company has a first priority class right under schedule 6 of the decree. That schedule gives the Irrigation Company the right to divert 36.65 cfs[1] at Diversions 6, 7, 41, 55, and 239 to supply the company's 5,864.7 acres. Regarding that schedule 6 right, paragraph 48 of the decree provides in relevant part as follows: 'Subject to all of the foregoing rights and provisions, the various parties hereinafter enumerated in Schedule 6 are entitled to rights in and to the use of the natural flow of Susan River and its tributaries during the seasons hereinbefore defined in paragraph 21, for domestic, stock-watering and irrigation purposes upon their respective lands as shown on said Division of Water Resources Map, and as hereinafter described under their respective names in Schedule 1, in accordance with the acreages to be supplied, priorities and

---

**1** Cubic feet per second.

3

quantities of water allotted, and through the diversions as set forth in said Schedule 6; . . . provided however, that diversion of all allotments set forth in said Schedule 6 shall be limited to the amounts directly applied to beneficial use with the exception of the allotments to Lassen Irrigation Company [and certain others] which may be diverted to storage.'

"Among other things, paragraph 49 of the decree explains that '[a]ll rights in first priority class hereinafter set forth in said Schedule 6 are subject and inferior to all rights set forth in said Schedules 3, 4 and 5, but are superior in priority and in right to all other rights set forth in said Schedule 6 . . . .'

"In addition to its right to divert under schedule 6, the Irrigation Company has a right to store water under paragraph 50 of the decree, as follows: 'Subject to the foregoing rights and provisions, Lassen Irrigation Company is entitled to impound the natural flow of Susan River and its tributaries in the McCoy Flat, Hog Flat, and Lake Leavitt Reservoirs at points designated respectively on Division of Water Resources Map as Diversions 6, 7 and 239 as hereinafter described in Schedule 2, in an amount equal to the present combined capacity of said reservoirs, or approximately 31,500 acre-feet per annum, during the season hereinbefore stated in paragraph 21, or as much of said amount of water as is impounded in said reservoirs . . . and thereafter withdrawn from said reservoirs during the period from January 1 to December 31 of each year and applied to beneficial use for domestic and stock-watering purposes and for the irrigation of the lands of the stockholders of said company as hereinafter described under the name of said company in Schedule 1.'

"Paragraph 21 of the decree, which is referenced in both paragraph 48 and paragraph 50 (and all of the other paragraphs in the decree granting water rights), and which lies at the heart of the dispute in this case, provides as follows: 'All diversions for domestic, stock-watering, municipal and industrial purposes under the rights hereinafter provided and for irrigation purposes under the rights of "special class" hereinafter set forth in paragraphs 22 to 40, inclusive, shall be for continuous usage without regard to

4

season; the season of diversion of water for general irrigation purposes under the rights hereinafter set forth in Schedules 3, 4, 5 and 6, shall be for continuous usage during the period from March 1, to October 31, both dates inclusive, of each and every year and during said period all rights set forth in said schedules shall be superior to the storage rights hereinafter provided in paragraphs 41, 42, 43, 44, 50, 51 and 52; <u>except</u> that no water shall be diverted through Diversions 106 to 114, inclusive, (said diversions being located as hereinafter described in Schedule 2) between June 20 and August 1 of each and every year; <u>except further</u>, that Lassen Irrigation Company shall be entitled to divert, or store up to the present capacity of its reservoirs, estimated at 31,500 acre-feet, from the natural flow of Susan River between March 1 and July 1 of each year when the flow of said Susan River is in excess of 20 cubic feet per second, measured immediately above the confluence of said river with Willow Creek, and at all other times when the flow of said river is in excess of 5 cubic feet per second measured at said point, irrespective of and notwithstanding the allotments granted to users in said Schedules 3 and 6 and to users of third priority class in said Schedule 5 . . . and that during the period from November 1 of each and every year to the last day of February of the succeeding year, both dates inclusive, the rights hereinafter provided for the storage of the waters of said Susan River and its tributaries shall be superior to all irrigation rights, from said stream system, but said storage rights shall at all times be inferior and subject to the rights from said stream system for domestic, stock-watering, municipal and industrial purposes of the parties hereto, who require water from said stream system for said domestic, stock-watering, municipal and industrial purposes.' " (*Dow I*, *supra*, 216 Cal.App.4th at pp. 777-779, fn. omitted.)

II

*Dow I*

In *Dow I*, "Dow filed a motion in the *Fleming* case (No. 4573) to interpret and enforce the decree. By his motion, Dow asked the court to confirm that (1) the Susan River decree gives the Irrigation Company only two water rights, one for storage under

paragraph 50 and one for direct diversion to beneficial use under schedule 6; (2) nothing in the decree authorizes or empowers the Irrigation Company to divert its storage right under paragraph 50 for direct application to beneficial use; and (3) each year the Irrigation Company may fill each of its three reservoirs only once unless the Irrigation Company uses water available under its schedule 6 rights or water determined to be excess to the system. The main thrust of Dow's argument was that the watermaster erred in interpreting the decree to allow the Irrigation Company 'to divert the continuous flow equivalent of 31,500 [acre-feet] to be directly applied to a beneficial use.'

"The Irrigation Company opposed Dow's motion, contending that the decree 'expressly allows [the Irrigation Company] to both divert or store Susan River water as long as certain flows are maintained in the Susan River.' [¶] The trial court sided with the Irrigation Company, concluding that the word 'divert,' as used in paragraph 21, means 'diversion for direct application [to] beneficial use as opposed to storage.' Based on this interpretation, the court concluded that paragraph 21 allows the Irrigation Company to either divert for direct application to beneficial use or store up to 31,500 acre-feet of water annually, subject to the minimum flow requirements immediately above Willow Creek. [¶] Dow filed a timely notice of appeal from the order interpreting the decree." (*Dow I*, *supra*, 216 Cal.App.4th at p. 780.)

We disagreed with the trial court's interpretation of the paragraph 21 exception. (*Dow I*, *supra*, 216 Cal.App.4th at p. 768.) In reaching that conclusion, we conducted an in-depth analysis of various provisions of and the history leading up to the adoption of the decree to ascertain the meaning of "or." (*Id.* at pp. 782-789.) We noted that the paragraph 21 exception originated from the prior stipulation for judgment and was drafted by the Irrigation Company as a reservation to paragraph 12 of that stipulation. (*Id*. at pp. 775-776.)

We explained paragraph 21 "was intended to *qualify* or *limit* rights granted elsewhere in the decree -- particularly by specifying *when* those rights can be exercised." (*Dow I*, *supra*, 216 Cal.App.4th at p. 782.) We concluded that, by giving the word "or"

6

its ordinary meaning (i.e., "as a choice between alternatives") and giving effect to the two commas creating a parenthetical phrase, the paragraph 21 exception provides: " '[B]etween March 1 and July 1 of each year when the flow of [the] Susan River is in excess of 20 cubic feet per second, measured immediately above the confluence of said river with Willow Creek, and at all other times when the flow of said river is in excess of 5 cubic feet per second measured at said point,' the Irrigation Company 'shall be entitled to' (1) 'divert . . . from the natural flow of Susan River' 'or' (2) 'store up to the present capacity of its reservoirs, estimated at 31,500 acre-feet' 'from the natural flow of Susan River.' " (*Id*. at p. 784.) "Understood in this manner, the exception in paragraph 21 under consideration serves to specify when the Irrigation Company may exercise its water rights under both schedule 6 and paragraph 50 of the decree." (*Id*. at p. 785.)

In that regard, paragraph 21 gives "the Irrigation Company's schedule 6 right greater priority than it would otherwise have. For example, as long as the minimum flow requirements immediately above Willow Creek are satisfied and the Irrigation Company leaves enough additional water in the river to satisfy the users on the river above the confluence with Willow Creek, the Irrigation Company can directly divert up to 36.65 cfs under its schedule 6 right irrespective of other users like Dow with rights under the third priority class in schedule 5 and the first priority class in schedule 6. And this is true even if the Irrigation Company has already stored all the water it is entitled to store under paragraph 50 of the decree. That means there may be times when Dow is not receiving all of the water to which he is entitled under schedules 5 and 6 but the Irrigation Company is able to divert water into an otherwise full Lake Leavitt at the same time it is simultaneously releasing water from the reservoir for use by its shareholders. In such an instance, the water passing through the lake is water available to the Irrigation Company under its schedule 6 right, which by the terms of paragraph 21 takes priority over Dow's rights." (*Dow I*, *supra*, 216 Cal.App.4th at pp. 789-790.) We will refer to the foregoing example as the example in the remainder of this opinion.

7

We further explained that "we believe the history of the operative language [in paragraph 21] shows that that language was inserted into the seasons of use paragraph at the behest of the Irrigation Company to clarify that it could exercise its right to direct diversion under schedule 6 and/or its right to storage under paragraph 50 as long as the minimum flow requirements were met immediately above Willow Creek, subject only to the rights under the first and second priority classes in schedule 5."  (*Dow I*, *supra*, 216 Cal.App.4th at pp. 792-793.)

## III

### *The Current Dispute*

Dow, on behalf of the trust, filed a water rights dispute form with the watermaster in 2018, stating the watermaster proceeded in contravention of *Dow I* when it allowed the Irrigation Company to concurrently divert under its schedule 6 right and store water under its paragraph 50 right in April and May 2018.  This, the trust argued, reduced the water available to the trust for use on its ranches.

The watermaster read *Dow I* "as granting [the Irrigation Company] the right to exercise all its rights," relying on our disjunctive interpretation of "or" in the paragraph 21 exception and the example we provided.  The watermaster concluded:  "Despite other interpretations being possible under the Decree, as interpreted, the simultaneous drawing down and recharging of the storage facilities, while it could be done in an 'on-off' basis, is not prohibited under the Decree, as interpreted.  Further, nothing expressly prohibits the simultaneous application of all available water rights held by a party to the Decree. Therefore, Mr. Dow's suggested solution/relief that the [Irrigation Company], under the supervision of the [watermaster], release into the Susan River an amount of water equal to what was diverted into Leavit Lake in April and May of 2018, for use by Schedule 3, Schedule 5 priority 3, and Schedule 6 users, which is requested in Mr. Dow's June 6, 2018 Complaint ('Complaint'), is hereby denied."

Dow, on behalf of the trust, filed a motion in the trial court (subject to the court's continuing jurisdiction as provided in the decree), challenging the watermaster's decision.

8

In his accompanying declaration, Dow declared that, "[i]f [the Irrigation Company] is permitted to simultaneously exercise its Schedule 6 and Paragraph [50] rights, I, and other water users, will not receive a majority of the Schedule 5 (Priority 3) or Schedule 6 water rights. Under this scenario, I will only receive water in these schedules in extremely high flows such as flood flows."

The trial court denied the trust's motion. The court found *Dow I* "addressed the issue here at great length," having "exclusively dealt with the language of Paragraph 21, examining the Decree as a whole to ascertain the drafters' intent and delving into the weeds of grammatical construction." The trial court looked to our disjunctive interpretation of "or" and the example. As to the example, the trial court said: "It appears that the Trust misconstrues the court's example, or chooses to ignore the full text of the example by omitting the entirety of the line beginning 'And this is true even if . . .' . The true meaning seems to be that simultaneous exercise of schedule 6 and paragraph 50 rights may be exercised by [the Irrigation Company] up to and including when full storage capacity has been reached, not only if, or only after, full capacity has been achieved, so long as the Willow Creek minimum flows are not impaired."

The trial court reasoned: "It appears that the nut of the matter is ensuring minimum flows at Willow Creek. The Trust has argued that it is entitled to more water than would be available at minimum flows, but that does not mean that [the Irrigation Company] is restricted in the exercise of its rights to see that that happens. It does not appear that [the Irrigation Company] has an obligation to the Trust other than to ensure the exercise of its rights do not result in impairment of the 20/5 minimum flow requirements. In a year of abundant water it may be that even with [the Irrigation Company] fully exercising its rights there would be sufficient water at and beyond Willow Creek for users like the Trust to fully enjoy their entitlements. Conversely, in harsher conditions there may not be such excess water passing Willow Creek and downstream users like the Trust may be affected. As the Dow court said '. . . there may

9

be times when Dow (the Trust) is not receiving all of the water to which he (it) is entitled . . . .' "

## DISCUSSION[2]

The trust raises two arguments. First, it asserts *Dow I* squarely states the "or" in the paragraph 21 exception must be read in the exclusive sense and, thus, the watermaster and trial court failed to follow the law of the case. Second, in the alternative and if *Dow I* did not address the issue, the trust believes the plain language of the decree dictates that the "or" be read in the exclusive sense. We disagree with both arguments. Before we delve into the analysis of the trust's arguments, however, we address the parties' disagreement as to the appropriate standard of review.

## I

### *Standard Of Review*

The Irrigation Company argues we should give deference to the watermaster's interpretation of the decree because, by appointing the watermaster, "the Court has entrusted administration of the 1940 Decree with the [watermaster] by presumably acknowledging it has the competence and expertise to perform this function, and no basis exists for not deferring to such expertise." The Irrigation Company relies on deferential review principles generally extended to review of an administrative agency's interpretation of a statute or regulation involving its area of expertise. (Citing

---

[2]     We do not consider the Irrigation Company's argument that the trust is seeking an advisory opinion. The argument is based on the premise that Dow's declaration lacked foundation establishing personal knowledge of the facts attested to therein and was likely based on improper hearsay. The Irrigation Company objected to Dow's declaration in the trial court on those very grounds. The trial court overruled the objections and the Irrigation Company did not file a cross-appeal. A respondent who fails to file a cross-appeal cannot urge error on appeal. (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7.) We thus do not consider the Irrigation Company's evidentiary objections to Dow's declaration in this appeal.

*Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1103-1104.)

The watermaster argues "this Court should apply a standard of review in which it considers whether the 1940 Decree can be reasonably understood in the manner in which it was interpreted by the superior court and by [the watermaster]," placing the burden of proving error on the trust.

The trust asserts we should review the watermaster's decision de novo because the issue presented is a question of law and the watermaster "is not a separate branch of government" but instead "considered an arm of the Court."

We apply de novo review, exercising our independent judgment as to the inclusive or exclusive sense of the "or" in the paragraph 21 exception because the question does not turn upon the credibility of extrinsic evidence. (See *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 797-798.) Further, even if deferential review applies to some watermaster decisions, the question of law as to the interpretation of the decree presented here falls within the court's and not the watermaster's area of expertise. (See *City of Brentwood v. Dept. of Finance* (2020) 54 Cal.App.5th 418, 428.)

II

*The Watermaster And The Trial Court Did Not*

*Fail To Follow The Law Of The Case*

The trust asserts the watermaster and the trial court erred in failing to apply the law of the case because they interpreted the paragraph 21 exception in a manner inconsistent with *Dow I* by reading the "or" as a conjunctive rather than disjunctive connector and misapprehending the meaning of the example. It appears the trust believes our conclusion that the "or" is a disjunctive connector necessarily means it applies in the exclusive sense. The trust is mistaken.

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its

11

subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration th[e appellate] court may be clearly of the opinion that the former decision is erroneous in that particular.' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893.) The doctrine applies only if the point of law was necessary to the prior decision, and it was a matter actually presented to and determined by the reviewing court. (*People v. Shuey* (1975) 13 Cal.3d 835, 842.)

The only rule established in *Dow I* as to the "or" in the paragraph 21 exception was regarding its disjunctive nature. We did not consider whether the disjunctive connector is inclusive or exclusive because it was not an issue presented in that appeal. (See *Burke v. State*, *supra*, 290 P.3d at p. 794 ["To say that 'or' is 'disjunctive' is true enough. But authorities agree that a disjunctive connector can have either an 'inclusive' or an 'exclusive' sense. Thus 'A or B' can mean one or the other, but not both. But it can also mean one or the other, *or both*"].) Indeed, the trust acknowledges as much, stating "the precise issue presented in this appeal is distinct from the issue before the Court in 2012."

The trust's reliance on our use of "either/or" in *Dow I* (to explain the disjunctive nature of the "or") for the proposition that we gave the connector a disjunctive exclusive interpretation is misplaced. It is clear from the context of the analysis that we did not use the language to denote the "or" as exclusive. We merely said that the "or" was used as a disjunctive connector indicating an alternative " 'such as "either this or that." ' " (*Dow I*, *supra*, 216 Cal.App.4th at p. 783.) The use of "or" in that context (as either this or that) does not necessarily mean the "or" is exclusive. (See, e.g., *Barker Bros., Inc. v. Los Angeles* (1938) 10 Cal.2d 603, 606 ["The ordinance in controversy requires a license for any department store *or* any store where a variety of goods, wares and merchandise are offered for sale from several departments or sections. The word 'or' is ordinarily used as a disjunctive 'that marks an alternative generally corresponding to "either" as "to either this or that" '. [Citations.] As so understood the ordinance brings within the scope of its provisions *both* department stores and those which may not be 'commonly known' as

12

such but offer their goods for sale from several departments or sections"], first italics in original, second italics added.)

The example in *Dow I* does not support the trust's position either. The example merely illustrated how the terms of paragraph 21 gave the Irrigation Company's right to divert under schedule 6 greater priority than it would otherwise have under the decree. (*Dow I*, *supra*, 216 Cal.App.4th at p. 789.) Nothing in the example could be read to support the proposition that the Irrigation Company may exercise only one of its " 'altered priority' rights," as the trust calls them, at a time. The trust's tortured reading of the example is simply wrong.

We conclude the watermaster and the trial court followed the law of the case by treating the "or" in the paragraph 21 exception as a disjunctive connector. The question is whether they erred in further interpreting the "or" in the inclusive sense.

III

*The "Or" Is Disjunctive In The Inclusive Sense*

The trust asserts "the plain language of the Decree itself leads to one reasonable conclusion: that [the Irrigation Company] can only exercise one right, or the other -- it may not exercise the rights concurrently." The trust relies on various dictionary definitions of "or" as indicating an alternative and demonstrating alternative possibilities, and California cases interpreting "or" as a disjunctive term and to denote an alternative such as "either this or that." The trust further argues an inclusive interpretation would result in absurdity and unfairness.

The dictionary definitions and cases upon which the trust relies address only the disjunctive nature of "or." But, of course, there is no quibble with that; that issue was addressed and decided in *Dow I*. None of the authorities cited by the trust address the exclusive and inclusive sense of the word or inform our inquiry in that regard.

"Legal sources differ on which meaning of 'or' [(as inclusive or exclusive)] is authoritative. In the realm of symbolic logic, the exclusive 'or,' otherwise known as the exclusive disjunction, means that only one of the propositions or terms joined by the

13

disjunction can be true. 'Jim is eight or nine years old' is exemplary of an exclusive disjunction because only one proposition in the disjunction can be true. On the other hand, an inclusive disjunction assumes that either one or both of the terms or propositions on either side of the disjunction are true. A sentence like, 'X will call or email Y,' does not necessarily denote an exclusive disjunction, but rather, it leaves open the possibility that X could call *and* email Y. Essentially, an inclusive disjunction allows the possibility of either option, or both, which is also the literal meaning of *and/or*." (*Commonwealth v. Griffin* (Pa. 2019) 207 A.3d 827, 831, fn. 4.) "[I]t has been asserted that, in legal drafting, it is more often the case that the connective 'or' is used in the inclusive sense" (*Burke v. State*, *supra*, 290 P.3d at p. 794) and "[i]n ordinary English, the phrase 'P or Q' on its own often suggests the inclusive sense of 'or' " (*Gonzalez v. State* (Del. 2019) 207 A.3d 147, 156).

We agree with other courts that "[w]hether the disjunctive 'or' is inclusive or exclusive will depend on its context." (*Burke v. State*, *supra*, 290 P.3d at p. 794; see *Lake v. Woodcreek Homeowners Assn.* (2010) 169 Wn.2d 516, 528 [243 P.3d 1283, 1289] [same]; see *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 5-6 [meaning of "or" and "and" depends on the context within which the word appears, the reason for the writing, and what interpretation comports with the drafter's intent].) In that regard, we observe the Irrigation Company's diversion and storage rights are not mutually exclusive rights, i.e., the very nature of the alternatives created by the "or" is *not* such that only one alternative may possibly apply at a time. The trust agrees, stating it "is not arguing that [the Irrigation Company's] rights are mutually exclusive pursuant to their defining terms." Indeed, this dispute arose because the Irrigation Company exercised both of its rights simultaneously.

Further, as the watermaster noted and the trust agrees, nothing in the decree prevents any of the other parties from simultaneously exercising their water rights. Thus, what the trust proposes is to read the "or" in the paragraph 21 exception as intending to create an exception to the general rule of simultaneous use as to the Irrigation Company

14

alone. But, we find no support for this interpretation in the history or language of the decree. In fact, the history of the paragraph 21 exception indicates quite the opposite.

As we explained in *Dow I*, "we believe the history of the operative language shows that that language was inserted into the seasons of use paragraph [(i.e., paragraph 21)] at the behest of the Irrigation Company to clarify that it could exercise its right to direct diversion under schedule 6 *and/or* its right to storage under paragraph 50 as long as the minimum flow requirements were met immediately above Willow Creek, subject only to the rights under the first and second priority classes in schedule 5." (*Dow I*, *supra*, 216 Cal.App.4th at pp. 792-793, italics added.) Thus, "the exception in paragraph 21 under consideration serves to specify when the Irrigation Company may exercise its water rights under *both* schedule 6 and paragraph 50 of the decree." (*Id*. at p. 785, italics added.)

In other words, the Irrigation Company's reservation in the stipulation, which was ultimately adopted almost verbatim in the decree as the paragraph 21 exception (*Dow I*, *supra*, 216 Cal.App.4th at pp. 775-776), was self-serving in that the Irrigation Company sought to ensure it had the ability to exercise *both* its diversion and storage rights. It appears imminently reasonable that given the Irrigation Company's proposed self-serving language, one would expect that, if the parties to the decree intended to limit the Irrigation Company's rights as proposed by the trust, they would have done so by conclusive and direct language rather than simply using an ambiguous "or," as proposed by the Irrigation Company.

We also note the paragraph 21 exception is not the only exception granted to the Irrigation Company. In paragraph 48, the Irrigation Company is given the right to divert 36.65 cfs for either storage or for direct application to beneficial use, whereas other parties are limited to diversion for direct application to beneficial use. As to schedule 5 rights, the Irrigation Company is given another exception in paragraph 47: "provided further, that Lassen Irrigation Company shall be entitled to divert under their rights hereinafter set forth in paragraph 50 from the flow of Susan River in excess of 20 cubic

feet per second measured above the confluence of said river with Willow Creek during the period from March 1st to July 1st, and from the flow of said river in excess of 5 cubic feet per second measured at said point at all other times."

Taken together, the exceptions in the decree indicate an intent to provide the Irrigation Company with flexibility in exercising its rights. Construing the "or" in the inclusive sense would carry out that purpose. (*In re Reineger* (1920) 184 Cal. 97, 103 ["A narrow or restricted meaning should not be given to a word, if it would result in an evasion of the evident purpose of the act, when a permissible, but broader, meaning would prevent the evasion and carry out that purpose"].)

As to the trust's absurdity and unfairness argument, the trust asserts an inclusive interpretation of "or" "virtually guarantees that Dow and other affected water users would never receive their entire allotted rights in the absence of extremely high flows, such as flood flows." In the trust's view, "[i]f this interpretation was actually intended by the language in the Decree, no water user affected by Paragraph 21's 'altered priority' would have agreed to it."

The question is whether the trust's inability to receive its *full* allotment under the decree *at times* renders the inclusive interpretation of the "or" absurd. It does not. The very purpose of the decree is to establish priorities of water rights. Those with superior priorities get access to water in scarce years when those with inferior priorities do not. That is the nature of the beast; unfairness in that sense, as the trust describes it, is inherent in the water rights system. As we explained in *Dow I*, the paragraph 21 exception "give[s] the Irrigation Company's schedule 6 right greater priority than it would otherwise have," "mean[ing] there may be times when Dow is not receiving all of the water to which he is entitled under schedules 5 and 6" but the Irrigation Company may nonetheless exercise its rights. (*Dow I*, *supra*, 216 Cal.App.4th at pp. 789, 790.) We do not find such a result absurd or unfair given the nature of the rights at issue and that the very purpose of the decree was to resolve the relative priorities of the parties' water rights.

16

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


/s/
Robie, J.


We concur:


/s/
Hull, Acting P. J.


/s/
Murray, J.

17